IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOUTHERN GROWERS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civ. No. 05-1821 (JR) |
| v. | ) | |
| | ) | |
| | ) | |
| ANN VENEMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR PARTIAL DISMISSAL

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants respectfully move this Court to dismiss Count III in toto and Counts I, II, and IV in part.  The attached memorandum sets forth more fully the grounds for this motion.

Dated:  November 14, 2005

OF COUNSEL:

RON WALKOW
RICK GIBSON
Attorneys

United States Department
of Agriculture

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

ROSCOE C. HOWARD, JR.
United States Attorney

s/ Justin M. Sandberg
MICHAEL SITCOV
(D.C. Bar # 308692)
JUSTIN M. SANDBERG
(Ill. Bar # 6278377)
Attorneys
United States Department of Justice
Civil Division, Rm. 7224
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Telephone:  (202) 514-3489
Fax: (202) 616-8202

Counsels for Defendants

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOUTHERN GROWERS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civ. No. 05-1821 (JR) |
| v. | ) | |
| | ) | |
| | ) | |
| MIKE JOHANNS,[1] et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

**Introduction**

Plaintiffs Southern Growers Incorporated ("SGI") and Thomas Burrell allege that a number of United States Department of Agriculture ("USDA") employees interfered with a contract and improperly delayed or denied loans and grants due to them. They contend that racial animus and a desire to retaliate against them because of their participation in certain political activities and Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999), motivated this supposed misconduct, and they forge these allegations into claims under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 et seq., Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Fifth Amendment of the Constitution, U.S. Const. amend. V. As explained in greater detail below, most of plaintiffs' claims should be dismissed at this stage.

---

[1] Federal Rule of Civil Procedure 25(d)(1) automatically substitutes Secretary of Agriculture Mike Johanns for former Secretary Ann Veneman. For more on this matter, see p. 3.

1

Many of plaintiffs' claims are crippled by a lack of jurisdiction, see Fed. R. Civ. P. 12(b)(1),

or the failure to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), or both.

Plaintiffs' face three jurisdictional problems.  The first one is standing: Mr. Burrell does not have

constitutional standing to bring this suit because the relief he seeks will not remedy the harm about

which he complains, and SGI lacks standing to bring claims for injunctive relief for the same reason.

The second jurisdictional problem is sovereign immunity.  That is, the United States has not waived

its immunity from suit with respect to certain of the plaintiffs' claims.  The third jurisdictional

difficulty for plaintiffs is that the statute of limitations for the ECOA claims has expired; this matter

is jurisdictional because the statute of limitations is a condition on the United States's waiver of its

sovereign immunity.  As for plaintiffs' Rule 12(b)(6) difficulties, a number of their claims rely on

laws that do not apply to the circumstances or the defendants.  Finally, various of their claims are

encrusted with both jurisdictional and Rule 12(b)(6) problems.

## Facts

For purposes of this motion only, the facts are drawn from the Complaint and taken as true,

with the exception of facts related to personal jurisdiction over the defendants.[2]  We first review the

parties.  SGI is a non-profit cooperative association composed of African-American farmers.  Compl.

¶ 3.  Mr. Burrell is an African-American farmer, a member of SGI, and its President.  Id. at ¶ 4.  The

government defendants are the Secretary of Agriculture Mike Johanns, and USDA employees James

---

[2] The court may look outside the pleadings with respect to issues of personal jurisdiction, Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005), and service is an aspect of personal jurisdiction, Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C. Cir. 2002).  The personal jurisdiction issue in this case is the question of whether the Court has jurisdiction over the defendants in their individual capacities.  See Ali v. District of Columbia, 278 F.3d 1, 7 (D.C. Cir. 2002) (distinguishing personal jurisdiction over a government official in his official capacity from personal jurisdiction over a government official in his individual capacity).

Little, Linda Barnes, James Sanders, Billy Lane, Frank Rodgers, and Rickey English.[3]  See id. at ¶¶ 6-11.

The Complaint actually identifies former Secretary of Agriculture Ann Veneman, rather than Secretary Johanns, as a defendant.  She is sued only in her official capacity, though, as plaintiffs do not explicitly name her in her individual capacity and do not allege that she personally took part in any of the alleged malfeasance.  Veatch v. Hawk-Sawyer, 2001 WL 1154492 (D.C. Cir. Aug. 15, 2001) (unpublished) (concluding that plaintiffs did not make out individual-capacity claims because they did not allege personal involvement by the defendants).  This being so, former Secretary Veneman is not, in fact, a party to the case:  Federal Rule of Civil Procedure 25(d)(1) automatically substitutes the current officeholder (Mr. Johanns) for the former one (Ms. Veneman) with respect to official-capacity claims.  The Complaint names the other government defendants in both their individual and official capacities.  Compl. ¶ 39.

We now turn from the players to the story.  Three groups of facts lie at the heart of the Complaint:  one involves SGI's attempts to secure a grant; the second involves SGI members' loan requests being turned down;  and the third pertains to SGI's contractual dealings with a private-party defendant, Coach Perkins.

SGI applied for a grant from the USDA which "was to help SGI economically refine a variety of fruits and vegetables."  Compl. ¶ 17.  The USDA tentatively approved the grant.  Id. at ¶ 18.

---

[3] We need to clarify several points regarding the identity of the government defendants.  Neither Billy Lane nor Rickey English is named in caption of the Complaint, and Mr. English is not even named in the "Parties" section of the Complaint.  See Complaint p. 1-2, 4-6.  Nonetheless, we understand both Mr. Lane and Mr. English to be defendants.  Cf. Rice v. Hamilton Air Force Base Commisary, 720 F.2d 1082, 1085 (9th Cir. 1983).  Also, the Complaint erroneously names Berry Wright as a federal government defendant.  Compl. ¶ 39.  Mr. Wright did not work for the federal government at the time of the incidents described in the Complaint and he does not work for it now.  Thus, this motion does not address plaintiffs' claims against Mr. Wright.

Later, however, the USDA instructed Mr. Burrell that SGI would have to purchase a bond before it would authorize the grant, a condition that Mr. Burrell objected was not required of other corporations.  Id. at ¶ 20.  (The Complaint does not indicate what ultimately happened with respect to the bond requirement.)  In July 2002, Mr. Burrell and SGI organized a sit-in at a local USDA office apparently in response to the dispute over the grant and other perceived wrongs.  See id. at ¶ 27.  On July 5, 2002, the USDA denied loans to all of the members of SGI who had applied for them.  Id. at 28.  And on July 8, 2002, Mr. Burrell met with then-Secretary of Agriculture Veneman and her staff regarding the inability of black farmers to obtain loans from the USDA.  Id. at ¶ 29.

Around the time of the sit-in, the USDA loaned Coach Perkins, an African-American farmer and private-party defendant, money to plant sweet potatoes.  Compl. ¶ 26.  The loan was premised in part on SGI agreeing to purchase at least some of the sweet potatoes that Mr. Perkins was to plant.  Id. at ¶ 23.  After the sit-in and the meeting with Secretary Veneman had taken place, Mr. Perkins applied for a USDA loan to harvest the sweet potatoes.  Id. at ¶ 30.  (The Complaint does not allege that Mr. Perkins took part in the sit-in or the meeting with Secretary Veneman.)  The loan was not immediately approved, and the USDA informed Mr. Burrell that the matter would be reviewed at a national level.  Id. at ¶ 33.  Mr. Perkins decided not to pursue the loan request and informed Mr. Burrell that he believed that SGI was responsible for harvesting the sweet potatoes.  Id. at ¶ 37.  No one harvested the sweet potatoes, so they rotted in the field.  Id. at ¶ 43.

The Complaint also includes allegations of impropriety by members of SGI (e.g., that some members used SGI funds for private purposes).  See, e.g., Compl. ¶¶ 22, 32.  These misdeeds, the Complaint states, were perpetrated in conjunction with the government defendants as part of a

4

conspiracy to undermine SGI's attempts to obtain loans and grants and to interfere with SGI's contract with Mr. Perkins.

Based on these facts, plaintiffs contend that the government defendants interfered with SGI's contract with Coach Perkins and denied or delayed grants and credit (loans) due to them.  Compl. ¶ 50.  Plaintiffs maintain that these actions were motivated by racial animus and a desire to retaliate against them for the sit-in, the meeting with Secretary Veneman, and their participation in the Pigford case, id. at ¶ 39; they construct claims under the Declaratory Judgement Act, the APA, the Fifth Amendment, the ECOA, and Title VI, and seek both injunctive and declaratory relief.  See id. at ¶¶ 47-58, p.14.[4]

**Argument**

**I.    The Complaint Should Be Construed As Raising Only Official-Capacity Claims.**

The complaint names USDA employees James Little, Linda Barnes, James Sanders, Billy Lane, Frank Rodgers, and Rickey English in their official and individual capacities.  But the Court should read the complaint as raising only official-capacity claims because most of the defendants have not been individually served and plaintiffs seek relief related to the defendants' official capacities.

---

[4] The counts of the Complaint are self-explanatory with the exception Count II, which merits some explanation given its opaqueness.  In Count II, plaintiffs allege that the government defendants interfered with a contract and delayed or denied grants and loans.  Compl. ¶¶ 49-51.  They contend that these actions were both retaliatory and racially discriminatory.  Id. at ¶ 50.  All of this translates into six claims – so far (assuming no distinction between delay and denial claims).  Plaintiffs raise each of these claims pursuant to both the arbitrary and capricious language of § 706 of the APA and the Fifth Amendment.  Id. at ¶¶ 50-51.  This brings the total number of claims to twelve.  Also, plaintiffs request declaratory and injunctive relief with respect to each claim, id. at ¶¶ 50-51, p.14, taking the total number of claims to twenty-four.  Finally, as both plaintiffs bring each of these claims, id. at ¶ 50, the total number of claims skyrockets to forty-eight.  Given this array of claims, we close the motion by listing the claims from the Complaint that would remain were the motion granted.

5

Plaintiffs individual-capacity claims with respect to Linda Barnes, James Sanders, Billy Lane, and Rickey English fail because these defendants have not been individually served. To be subject to an individual-capacity suit, a defendant must be individually served pursuant to Federal Rule of Civil Procedure 4(e). See Commercial Drapery Contractors, Inc. v. U.S., 133 F.3d 1, 8 n.6 (D.C. Cir. 1998) (noting that the service requirements for individual-capacity claims differ from the service requirement for official-capacity claims and that service must be made pursuant to Rule 4(e) for individual-capacity claims). The defendants listed in the opening sentence of this paragraph have not been individually served, so they face only official-capacity suits. Plaintiffs have individually served James Little and Frank Rodgers, however, so the individual-capacity claims aimed at them pass this threshold test.

The surviving individual-capacity claims evaporate once one considers the relief sought by plaintiffs. For an individual-capacity claim to be cognizable, a plaintiff must seek relief that relates to a defendant's individual capacity. See Community Mental Health Services v. Mental Health and Recovery Board, 2005 WL 2233603, * 11 (6th Cir. Sept. 14, 2005) (unpublished) (explaining that plaintiff was not seeking to impose individual liability on any defendants and concluding that a "plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job"). In this case, plaintiffs seek declaratory and injunctive relief related to the named individuals' official capacities, as opposed to injunctive relief or damages related to their individual capacities. See Compl. pp. 14-15. The requests for relief that come closest to implicating the defendants' personal capacities are those asking the court to "enjoin[ ] defendants from retaliatory and discriminatory acts" and "from intentionally interfering with Plaintiffs contracts"; the other requests are for declarations related to

6

the defendants' past official conduct.  Id. at p. 14.  The pleas for injunctive relief should be read in the context of the complaint, however, in which all of the specified wrongful acts (e.g., the withholding of USDA loans and grants) relate to the defendants' official duties.  See Compl. ¶¶ 20, 28, 35, 39.  So read, these requests relate to official-capacity actions only, and accordingly the Court should understand the Complaint to raise only official-capacity claims.  See Community Mental Health Services, 2005 WL 2233603 at * 11.

Given this analysis, we ignore the supposed individual-capacity claims until Section VII.  In Section VII, we discuss the applicability of the arguments made in Sections II through VI to the supposed individual-capacity claims and set out a few arguments which apply to these claims, but not the official-capacity claims.

## II.    Mr. Burrell's Claims and Many of SGI's Claims Should Be Dismissed Because Mr. Burrell and SGI Lack Constitutional Standing to Bring Them.

Many of plaintiffs claims should be dismissed for lack of standing.  Mr. Burrell contends that he has suffered monetary damages, see, e.g., Compl. ¶ 57, but he seeks only injunctive and declaratory relief, id. at p. 14.  SGI alleges monetary as well as non-monetary harm, id. at ¶ 46, but it too seeks relief that will not alleviate its purported injuries, see id. at p. 14.  The court should dismiss, for lack of constitutional standing, the claims that seek relief which will not cure any of plaintiffs' alleged injuries.

A court cannot exercise subject matter jurisdiction over a claim unless the plaintiff has "standing," because without standing, there is not a justiciable case or controversy under Article III of the Constitution:  "The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

(1992); U.S. Const. art. III., § 2, cl. 1; High Plains Wireless, L.P. v. F.C.C., 276 F.3d 599, 605 (D.C. Cir. 2002) (recognizing that a plaintiff may have standing to bring some claims but not others). A constituent element of this core component of standing is the ability of the court to redress the plaintiff's alleged injury. Lujan, 504 U.S. at 560. That is, standing does not exist unless the relief sought by a plaintiff is likely to remedy the complained of harm. Id.

Mr. Burrell does not have standing because the relief he seeks is not likely to remedy the harm about which he complains. The following statement fairly represents Mr. Burrell's allegations of harm: "As a direct and proximate result of defendant's acts, plaintiffs have sustained damages, including payments rightfully due plaintiffs."[5] Mr. Burrell does not allege in the Complaint that he intends to apply for grants or credit from the USDA or enter into any contracts similar to the one entered into by SGI. No declaration or injunction will help Mr. Burrell, then, because his only alleged harm is monetary. Because the equitable relief sought by Mr. Burrell will not relieve his injury, he lacks standing to bring the underlying claims. See Lujan, 504 U.S. at 560.

As for SGI, it lacks standing to bring any claims for injunctive relief. SGI alleges that it has "suffered monetary damages, humiliation, and damage to its reputation and credit worthiness" as a result of the defendants' actions. Compl. ¶ 46. It does not allege that it intends to apply for grants or credit from the USDA or enter into any contracts like the one that was purportedly interfered with. With no indication that SGI harbors such intentions, an injunction barring the USDA from impeding access to grants or credit or interfering with contracts, see id. at p. 14, would serve no purpose: It

---

[5] He also states that the defendants' acts deprived him of "equal and fair access to farm credit and programs; profits, good name (reputation) and due process, resulting in damages [to him]." Compl. p. 3. This statement of harm resembles the other in that it alleges only monetary harm.

would not alleviate the harms adverted to by SGI because SGI would receive no money and no luster would return to its name.

This case differs from <u>Meese v. Keene</u>, 481 U.S. 465, 476-477 (1987), because the injunction sought would not apply to an activity that directly and obviously affects a party's reputation.  In <u>Keene</u>, the Court found that enjoining the government from labeling the plaintiff's films as "political propaganda" would serve to partially redress the plaintiff's reputational harm.  <u>Id.</u> at 477.  It does not follow that the requested injunction in this case would alleviate plaintiff's reputational harm because an injunction that instructs the government not to discriminate, retaliate, or interfere with contracts does not burnish a person's reputation in the same way as an injunction that orders the government to stop diminishing a person's work:  the relationship between the injunction and the plaintiff's alleged reputational harm is more attenuated here.   Thus, one cannot say that the relief sought in this case is "likely" to remedy plaintiff's harm, <u>Lujan</u>, 504 U.S. at 560, and SGI does not have standing to raise the claims for injunctive relief that appear in Counts II, III, and IV.

The Court could dismiss these claims pursuant to the prudential mootness doctrine as well. Under this discretionary doctrine, a court may decline to award equitable relief (i.e., injunctive and declaratory relief) when it is "unlikely that the court's grant of [such relief] will actually relieve the injury." <u>Penthouse Intern. Ltd. v. Meese</u>, 939 F.2d 1011, 1019 (D.C. Cir. 1991).  The rationale underlying this argument mirrors the one laid out above:  the prospective remedies sought by plaintiffs will not cure the harms about which they complain.[6]

---

[6] We add a few words about what follows (and what does not).  Other than a statement incorporating previous paragraphs of the Complaint, the following statement constitutes the entirety of "Count I (Declaratory Judgment)": "Plaintiffs pray that this Court declare and determine, pursuant to 28 U.S.C. § 2201, the rights of plaintiffs to equal credit and participation in defendants farm programs."  Compl. ¶¶ 47-48.  Though this count appears ripe for dismissal because it does not state any claim (much less one upon which relief can be granted), the incorporated paragraphs, though supposedly factual in nature, actually contain the now familiar contract-interference and credit and grant claims.  Thus,

### III.    Count II Should Be Dismissed, in Part, Because the Government Has Not Waived Its Sovereign Immunity.

Count II comprises claims that the government impeded plaintiffs access to credit because of their race.  Plaintiffs ground these claims in, alternatively, the Fifth Amendment and the arbitrary and capricious language of the APA,  Compl. ¶¶ 50-51, and they apparently invoke the APA as a waiver of sovereign immunity, see id.  The Court should dismiss these claims because the government has not waived its sovereign immunity.[7]

A court has jurisdiction over an action against the United States (or its employees in their official capacity, the functional equivalent of a suit against the government, Kentucky v. Graham, 473 U.S. 159, 165 (1985)) only if the government has waived its immunity from suit with respect to the underlying claims.  See Tri-State Hospital Supply Corp. v. U.S., 342 F.3d 571, 575 (D.C. Cir. 2003); Clark v. Library of Congress, 750 F.2d 89, 103 (D.C. Cir. 1984).  The plaintiff bears the burden of establishing that the United States has waived its sovereign immunity.  Tri-State Hospital Supply Corp., 342 F.3d at 575.  The APA waives the government's sovereign immunity for certain claims seeking non-monetary relief.  5 U.S.C. §§ 702, 704.  But the waiver does not extend to a claim for which another "adequate remedy in a court" exists.  Id. at § 704; National Wrestling Coaches Ass'n v. Dept. of Educ., 366 F.3d 930, 947 (D.C. Cir. 2004).

The Court should dismiss the credit-discrimination claims raised in Count II because the government has not waived its sovereign immunity.  Plaintiffs apparently rely on the APA for the

---

this count covers the same ground as the others in the Complaint which seek declaratory relief, and we hereby adopt in opposition to it any arguments that apply to other claims seeking declaratory relief.

[7] This is an argument in the alternative with respect to Mr. Burrell and with respect to SGI insofar as SGI seeks injunctive relief.  To the extent that SGI seeks declaratory relief, this argument does not overlap with the standing argument.  This proviso applies to all of the arguments that follow.

necessary waiver of sovereign immunity.  Compl. ¶¶ 49-51.  (They do not explicitly cite the APA as the waiver, but they do employ language from the APA, see id. at ¶¶ 50-51, and it is the default waiver for claims requesting equitable relief when no other waiver is available, see 5 U.S.C. §§ 702, 704.)  Reliance on the APA waiver here is misplaced because there is an adequate alternative remedy, namely, a claim under the ECOA:  The ECOA makes creditors liable for racially-discriminatory credit practices and defines the term "creditor" to include "government or governmental subdivision or agency," 15 U.S.C. 1691a(e), (f).  See also Moore v. U.S. Dep't of Agriculture, 55 F.3d 991, 993-994 (5th Cir. 1995) (concluding that the ECOA includes a waiver of sovereign immunity); Stovall v. Veneman, --- F. Supp. 2d ---, 2005 WL 2692497, * 2 (D.D.C. Jan. 24, 2005) (same).  A credit discrimination claim brought solely under the APA or cobbled together under the APA/Fifth Amendment would serve the same function as an ECOA claim, then, because all three would allow private plaintiffs to hold the government responsible for discriminatory lending practices.  Given this identity, an ECOA claim constitutes an adequate remedy under the APA.  See Wise v. Glickman, 257 F. Supp. 2d 123, 127 (D.D.C. 2003) ("ECOA provides an adequate remedy for credit discrimination claims [under the APA].").

Though the ECOA claim is time-barred (details of the timing appear in Section V below), the once-potential claim nonetheless constitutes another "adequate remedy in court" sufficient to obviate the APA's waiver of sovereign immunity.  Congress wants plaintiffs to pursue narrowly-tailored causes of action (like ECOA claims) rather than APA suits, if any narrowly-tailored causes of action exist, because they represent its best assessment of how a particular problem should be addressed.  For proof of this intention, one need look no further than the APA's "other adequate remedy" limitation, which employs the APA as a mere backstop.  See 5 U.S.C. § 704.  Allowing a

11

plaintiff to bring an APA claim after he has fumbled away his non-APA action would flout Congress's intent, then, because the plaintiff would be empowered to choose which cause of action to pursue. This circumstance must be avoided because Congress's intent is the touchstone for statutory interpretation. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9 (1984). Consistent with this analysis, at least two courts have concluded that a remedy is adequate even if time-barred. See Mitchell v. U.S., 930 F.2d 893, 897 (Fed. Cir. 1991) (concluding that a time-barred claim is an adequate remedy under the APA); Brown v. U.S., 2002 WL 32332187, * 6 (D.S.C. April 30, 2002) (unpublished) (same); but see Godwin v. Sec'y of Housing and Urban Development, 356 F.3d 310, 312-313 (D.C. Cir. 2004) (suggesting, but not deciding, that determining whether a claim is time-barred is relevant to assessing whether an adequate alternative remedy exists). Thus, the APA does not waive the government's sovereign immunity from suit with respect to the credit-discrimination claims, and the Court should dismiss them for lack of jurisdiction.

## IV.    Counts II and IV Should Be Dismissed, in Part, for Failure to State a Claim Upon Which Relief Can Be Granted.

Counts II and IV encompass claims that the government defendants interfered with SGI's contract and delayed or denied grants or access to credit in retaliation for plaintiffs' involvement in political activities and Pigford v. Veneman. See Compl. ¶¶ 39, 50-51, 55. Plaintiffs anchor some of these claims in the Fifth Amendment. See id.

The Court should dismiss these claims, to the extent they depend upon the equal protection component of the Fifth Amendment's Due Process Clause, for failure to state a claim upon which relief can be granted: The Fifth Amendment's equal protection guarantee does not include a right

12

to be free from retaliation.  See, e.g., R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 439-440 (6th Cir. 2005); Boyd v. Illinois States Police, 384 F.3d 888, 898 (7th Cir. 2004); Kirby v. City of Elizabeth City, 388 F.3d 440, 447 (4th Cir. 2004); Watkins v. Bowden, 105 F.3d 1344, 1354-1355 (11th Cir. 1997); Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996).[8]  The crux of the retaliation claims is that the government defendants treated plaintiffs differently because of their past conduct, not because of a protected trait or membership in a particular class.  Compl. ¶ 39.  The equal protection component of the Fifth Amendment's Due Process Clause does not forbid such governmental action.  See Boyd, 384 F.3d at 898.

## V.    Count III Should Be Dismissed Because It Is Untimely.

Count III consists entirely of an allegation that the government defendants violated the ECOA.  Compl. ¶¶ 52-54.  The Court should dismiss this count because it is barred by the statute of limitations.  The ECOA has a two-year statute of limitations which provides, with exceptions irrelevant to this case, that "[n]o [ ] action shall be brought later than two years from the date of the occurrence of the violation."  15 U.S.C. § 1691e(f).  The date of the occurrence of the violation is the date when the "adverse [credit] action" (e.g., a denial of credit) occurs.  Haynie v. Veneman, 272 F. Supp. 2d 10, 15-17 (D.D.C. 2003) (quoting 15 U.S.C. § 1691(d)(6)); Farrell v. Bank of New Hampshire-Portsmouth, 929 F.2d 871, 874 (1st Cir. 1991).  The most recent supposed misdeeds mentioned in the Complaint took place in September 2002, Compl. ¶ 44, three years before the Complaint was filed.  Thus, the statute of limitations has run, and the plaintiffs' claims under the

---

[8] All of these cases deal with the Fourteenth Amendment's Equal Protection Clause, but the reach of the equal protection component of the Fifth Amendment's Due Process Clause is–with the exception that it applies to the federal government–coterminous with that of the Fourteenth Amendment's Equal Protection Clause.  See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 217-218 (1995).

ECOA are time-barred.  Because the statute of limitations is a condition on the government's waiver of sovereign immunity, the Court should dismiss this count for lack of jurisdiction pursuant to Rule 12(b)(1).  See Spannaus v. United States Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987); but see Harris v. F.A.A., 353 F.3d 1006, 1013 n. 7 (D.C. Cir. 2004) (expressing doubt about whether such statutes of limitation are jurisdictional).

**VI.    Count IV Should Be Dismissed, in Part, Because Title VI Does Not Apply to the Federal Government.**

Plaintiffs contend in Count IV that the government defendants' actions violated Title VI of the Civil Rights Act of 1964.  Compl. ¶ 56.  The Court should dismiss this claim for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Title VI prohibits various kinds of discrimination "under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The statute offers a comprehensive definition of program or activity, but this definition does not include programs or activities conducted by the federal government.  42 U.S.C. § 2000d-4a.  Accordingly,  numerous courts have concluded that Title VI does not apply to programs administered by the federal government.  See, e.g., Wise v. Glickman, 257 F. Supp. 2d 123, 131-132 (D.D.C. 2003); Williams v. Glickman, 936 F. Supp. 1, 5 (D.D.C. 1996); Soberal-Perez v. Heckler, 717 F.2d 36, 38 (2d Cir. 1983).  Plaintiffs complain about the activities of USDA employees sued in their official capacity, which is the equivalent of complaining about the federal government, Kentucky v. Graham, 473 U.S. 159, 165 (1985).  In line with the plain language of the statute and case law, then, Title VI does not apply to these complaints and plaintiffs fail to state a claim upon which relief can be granted.

14

**VII.    Were They Found to Exist, Many of the Individual-Capacity Claims Would Be Subject to Dismissal.**

Plaintiffs have sued a number of the defendants in their individual capacities.  Compl. ¶ 39.  As explained in Section I, these claims are illusory.  <u>See</u> pp. 5-7.  But if the court concludes otherwise, it should dismiss most of the claims pursuant to Rules 12(b)(1) and 12(b)(6).  With the exception of sovereign immunity, all of the problems that plague the official-capacity claims infect the individual-capacity claims too.  What is more, the individual-capacity claims encounter two difficulties that do not trouble the official-capacity claims, namely, courts will not infer a <u>Bivens</u> cause of action when Congress has established a finely-reticulated remedial scheme, and the APA does not subject individual government officials to personal liability.

Standing, the limits of the Fifth Amendment, the statute of limitations for ECOA claims, and the bounds of Title VI undo plaintiffs individual-capacity claims as well as their official-capacity claims.  First, standing:  suing the defendants in their individual capacities does not alter the fact that plaintiffs request relief that will not remedy the harms about which they complain.  As for the Fifth Amendment retaliation claims, the equal protection component of the Due Process Clause means the same thing whether the defendants are sued in their individual or official capacities, and it does not mean that plaintiffs have a right not to be retaliated against.  Nor does suing the defendants in their individual capacities lengthen the statute of limitations under the ECOA.  Finally, Title VI does not prohibit discrimination in programs administered by the federal government whether or not the defendants are sued in their individual capacities.

Plaintiffs' individual-capacity Fifth Amendment credit-discrimination claims are unavailing for a reason not pertinent to their official-capacity claims:  The ECOA's comprehensive remedial

scheme debars the Court from inferring a Bivens cause of action. The gist of the credit-discrimination claims is that the government defendants delayed or denied loans to plaintiffs because plaintiffs are African-American and that this circumstance constitutes a violation of the Fifth Amendment. Compl. ¶¶ 50-51. As claims of "constitutional injur[ies] ar[ising] out of the actions of federal agents" brought directly under the Constitution against the defendants in their individual capacities, these are Bivens claims. See Bunn v. Conley, 309 F.3d 1002, 1009 (7th Cir. 2002); see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[9] A Bivens claim relies on an implied cause of action because the Constitution does not expressly provide any. See, e.g., Davis v. District of Columbia, 158 F.3d 1342, 1347 (D.C. Cir. 1998). The Supreme Court has limited the circumstances in which courts can recognize such implied causes of action, however, instructing courts not to infer them when Congress has created "comprehensive procedural and substantive provisions giving meaningful remedies against the United States." Bush v. Lucas, 462 U.S. 367, 368 (1983). In this case, the Court should not infer a Bivens cause of action because the ECOA contains comprehensive procedural and substantive provisions which furnish meaningful remedies against the United States for racially discriminatory credit practices: It prohibits racially discriminatory credit practices, 15 U.S.C. § 1691(a); defines the actionable conduct somewhat broadly, § 1691(d)(6); waives sovereign immunity, § 1691(e),(f); provides for private actions for damages and equitable relief, § 1691e(a),(c); and establishes a statute of limitations of two years, with some exceptions, § 1691e(f).

---

[9] Though plaintiffs often seek damages in conjunction with Bivens claims, damages are not an essential element of a Bivens claim. See Bunn, 309 F.3d at 1009.

16

Plaintiffs' individual-capacity claims based on the APA also do not withstand scrutiny because the APA creates a limited entitlement to review of agency actions, not a mechanism for penalizing individual government officials for agency actions. The Supreme Court has emphasized that the "central purpose" of the APA's judicial-review provisions is to "provid[e] a broad spectrum of judicial review of *agency action*." Bowen v. Massachusetts, 487 U.S. 879, 903-904 (1988) (emphasis added). Consistent with this purpose, the APA grants individuals "aggrieved by agency action" the right to judicial review of that action, 5 U.S.C. § 702, and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions" which are improper in any of several listed ways. 5 U.S.C. § 706. What the APA does not do–and this should not cause any seismic tremors given the statutory backdrop–is provide a cause of action against government officials in their individual capacities, ala 42 U.S.C. § 1983, or establish any remedies against government officials in their individual capacities. Cf. Robbins v. Wilkie, 300 F.3d 1208, 1212 (10th Cir. 2002) (concluding that the APA is the proper avenue for reviewing agency actions and that it does not provide for holding federal officials personally liable for violating constitutional rights). Neither of these things would serve the APA review provisions's central purpose. The court should dismiss the APA-based individual-capacity claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## Conclusion

For the above stated reasons, the Court should read the complaint to raise only official-capacity claims and dismiss all of Mr. Burrell's claims and Southern Growers' injunctive-relief claims, credit-discrimination declaratory-judgment claims, Fifth Amendment declaratory-judgment

retaliation claims insofar as they rely on the equal protection component of the Due Process Clause, ECOA declaratory-judgment claims, and Title VI declaratory-judgment claims.

Were the Court to ignore the so-called individual-capacity claims and dismiss the official-capacity claims referred to in the preceding paragraph, SGI's Count II claims for declaratory relief, excluding those related to credit-discrimination, would survive. In other words, SGI's contract-interference, grant, and credit-retaliation claims brought pursuant to both the Fifth Amendment's Due Process Clause and the APA's arbitrary and capricious standard would remain, to the extent they seek declaratory relief. (The APA ostensibly provides the waiver of sovereign immunity, and the Fifth Amendment retaliation claims would survive, as argued above, only to the extent that they do not rely on the equal protection component of the Due Process Clause.) Fifth Amendment Due Process claims raised in Count IV (excluding those of the equal protection variety) would also remain, but they would overlap with the Due Process claims that would survive under Count II.

If the court were to recognize the individual-capacity claims, but otherwise adopt the positions advocated in this memorandum, it would dismiss the official-capacity claims rehearsed in the first paragraph of this section along with their individual-capacity cognates and the individual-capacity claims premised on the APA.

Dated: November 14, 2005                                    Respectfully submitted,

                                                            PETER D. KEISLER
OF COUNSEL:                                                 Assistant Attorney General

RON WALKOW                                                  ROSCOE C. HOWARD, JR.
RICK GIBSON                                                 United States Attorney
Attorneys

United States Department of Agriculture

s/ Justin M. Sandberg
MICHAEL SITCOV
(D.C. Bar # 308692)
JUSTIN M. SANDBERG
(Ill. Bar # 6278377)
Attorneys
United States Department of Justice
Civil Division, Rm. 7224
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Telephone:  (202) 514-3489
Fax: (202) 616-8202

Counsels for Defendants