IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN GROWERS, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civ. No. 05-1821 (JR) |
| v. ) | |
| ) | |
| ) | |
| MIKE JOHANNS, et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

**Introduction**

Plaintiffs' response does not undermine any of the government defendants' arguments in support of partial dismissal. It does not effectively refute the arguments that: the individual-capacity claims are merely mislabeled official-capacity claims; the plaintiffs do not have constitutional standing to bring all or some of their claims (depending on the plaintiff); the government has not waived its sovereign immunity with respect to credit-discrimination claims through the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 et seq.; the equal protection guarantee of the Fifth Amendment does not prohibit retaliation; the Equal Credit Opportunity Act's (ECOA's) statute of limitations has run, see generally 15 U.S.C. §§ 1691 et seq.; and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., does not govern programs administered by the federal government. Thus, the Court should construe the Complaint to raise only official-capacity claims and dismiss the claims identified in our opening memorandum.

1

**Argument**

I.  **Plaintiffs' Individual-Capacity Claims Are Really Official-Capacity Claims.**

We asked the Court, in our opening memorandum, to construe the Complaint to raise only official-capacity claims. Def. Mem. at 5-7. In their response, plaintiffs maintain that some of the claims in their Complaint relate to the defendants' individual capacities: "[P]laintiffs seek declaratory and injunctive relief related to the defendants personal acts of discrimination based on race (Complaint paragraphs 20, 27, 28, 33, 35, 38, 39, 40, 41, 44 and 45), in addition to enjoining defendants' racially retaliatory act of intentionally interfering with Plaintiffs contracts." Response at 4. Plaintiffs are wrong: The claims involve only the defendants' official capacities.

Plaintiffs complain about discrimination in the disbursement of USDA loans and grants. (This statement applies to the interference of contract claim too, for the alleged interference resulted from the USDA withholding a loan to a third-party defendant, Coach Perkins. See Compl. ¶¶ 35-42.) The paragraphs of the Complaint that plaintiffs cite as evidence of "personal acts of discrimination," Response at 4, pertain to the USDA's loan and grant decisions (and the plaintiffs' reactions to them), Complaint ¶¶ 20, 27, 28, 33, 35, 38, 39, 40, 41, 44 and 45. And what is more, plaintiffs emphasize in their response that they are "gravely concern[ed] about the present government defendants discriminating against their present and future grant and credit applications." Response at 6. See also Response at 5.

Given plaintiffs' concerns, no purpose would be served by entering injunctions against the defendants in their individual capacities because the defendants do not disperse loans and grants in their individual capacities. See Community Mental Health Services v. Mental Health Recovery Bd., 2005 WL 2233603, *11 (6th Cir. Sept. 14, 2005) (unpublished) ("[A] plaintiff should not be able

to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only the official's job."). All of the relief that plaintiffs seek can be secured through official-capacity claims.

## II. Mr. Burrell Does Not Have Constitutional Standing to Sue, and SGI Lacks Standing to Bring Claims for Injunctive Relief.

In our opening memorandum, we argued that Mr. Burrell lacks standing under Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), because the equitable relief he seeks is not likely to remedy the monetary harm about which he complains. See Def. Mem. at 8. Mr. Burrell counters that we have misread the Complaint and that in it he alleges harm to his reputation and to his ability to receive loans and grants in the future. Response at 5. Mr. Burrell did allege harm to his reputation, but he chose to phrase that harm in terms of damages: "These [allegedly discriminatory acts] deprived plaintiffs of . . . good name (reputation) . . . resulting in damages to them." Compl. p. 3. Because of this choice, equitable relief would not remedy his reputational harm. As for his ability to receive loans and grants, contrary to Mr. Burrell's representations in his response, he does not allege in the Complaint that he intends to apply for USDA loans and grants in the future. See Response at 5; Complaint. Without this allegation (and by virtue of the fact that he has denominated the harm he allegedly has suffered in monetary terms), equitable relief would serve no cognizable remedial function for Mr. Burrell. Cf. Committee in Solidarity With People of El Salvador v. Sessions, 929 F.2d 742, 745-746 (D.C. Cir. 1991) (concluding that plaintiffs could not obtain an injunction aimed at improving their ability to secure a government job because no plaintiff had expressed an interest in obtaining a government job).

With respect to SGI, we argued in our opening memorandum that it lacked standing to bring claims for injunctive relief because it did not allege that it intended to apply for loans or grants and an injunction would not alleviate the reputational harm about which it complains. Def. Mem. at 8-9. SGI responds only to the first part of this argument, apparently conceding the second part. SGI's difficulty on this count is the same as Mr. Burrell's: It does not allege in the Complaint that it intends to apply for USDA loans or grants. See Compl. Absent this contention, an injunction will not remedy SGI's harm, and SGI lacks standing to bring claims for injunctive relief. Cf. Committee in Solidarity With People of El Salvador, 929 F.2d at 745-746.

### III.  Sovereign Immunity Bars Plaintiffs' APA Claims for Credit Discrimination.

Our opening memorandum argued that the APA does not waive sovereign immunity with respect to plaintiffs' credit-discrimination claims because the ECOA provides an adequate alternative remedy. Def. Mem. at 10-12; see 5 U.S.C. § 704 (stating that the APA's waiver does not extend to a claim for which "another adequate remedy in a court" exists.) Plaintiffs retort that ECOA claims are not an adequate alternative because their ECOA claims are time-barred and "plaintiffs' claims are essential[ly] coupled with [claims against] the other private parties under the underlying contract." Response at 7. Neither argument carries the day for plaintiffs. In our opening memorandum, we explained that time-barred ECOA claims constitute an adequate alternative remedy because Congress intended APA claims to be available only to plaintiffs who do not have access to any other remedy; it did not intend for them to be a refuge for tardy plaintiffs. See Def. Mem. at 11-12. Plaintiffs offer no reason to question this argument. As for plaintiffs' second argument, it is a non-starter: The APA does not provide for relief against private parties, see 5 U.S.C. § 702; Def. Mem. at 17, so it is not superior to the ECOA with respect to Plaintiffs'

4

supposedly "coupled" claims, and plaintiffs' argument presents no support for the contention that ECOA claims are not suitable alternatives to APA claims.

**IV.     Counts II and IV Should Be Dismissed, in Part, Because the Equal Protection Guarantee of the Fifth Amendment Does Not Prohibit Retaliation.**

Our opening memorandum urges the court to dismiss plaintiffs' Fifth Amendment retaliation claims, to the extent they rely on the equal protection component of the Fifth Amendment's Due Process Clause, for failure to state claims upon which relief can be granted because this component of the Fifth Amendment does not include a right to be free from retaliation. Def. Mem. at 12-13. Plaintiffs argue in response that the Fifth Amendment covers the retaliatory acts in this case, which, they insist, are simply a species of defendants' alleged "racially discriminatory acts." Response at 7-8. Plaintiffs' rejoinder appears to be at odds with the language of the Complaint: "[Defendants] have delayed loans and credit . . . [because of] racial discrimination; retaliation for: the Pigford class action lawsuit; meetings with congressman and top agricultural officials and the sit-ins." Compl. ¶ 39. Two conclusions can be drawn from this apparent conflict. The first is that plaintiffs never intended to promulgate retaliation claims separate from their discrimination claims. The second is that plaintiffs do not recognize that a claim of retaliation for objecting to race discrimination is not equivalent to a claim of discrimination on the basis of race. See Yatvin v. Madison Metro. Sch. Dist., 840 F.2d 412, 418-419 (7th Cir. 1988). We believe that the second conclusion is the correct one because the best reading of the Complaint, given its separate mention of the supposed racially discriminatory and retaliatory motives, is that it raises separate retaliation claims. Thus, the Court should dismiss the retaliation claims pursuant to Fed. R. Civ. P. 12(b)(6), to the extent they rely on

the Fifth Amendment's equal protection guarantee, because this guarantee does not forbid retaliation. See, e.g., Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir. 2004).

V.      **Count III Should Be Dismissed Because It Is Untimely**.

In our opening memorandum, we argued that Count III should be dismissed because the ECOA's statute of limitations has run. Def. Mem. at 13-14. We added that this dismissal should probably be jurisdictional (because, we maintained, the statute of limitations is a condition on the government's waiver of sovereign immunity, see, e.g., Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987)), though we noted that there is some doubt about this point, Def. Mem. at 14. Plaintiffs' response does not dispute that the statute of limitations has run; it engages the opening memorandum only with respect to whether the dismissal should be jurisdictional. Response at 8. By their silence, plaintiffs have conceded that Count III is untimely, and the Court should dismiss this count pursuant to either Rule 12(b)(6) or Rule 12(b)(1). This choice might have practical consequences were equitable tolling an issue, see AFL-CIO v. OSHA, 905 F.2d 1568, 1570-1571 (D.C. Cir. 1990), but it is not: Plaintiffs have set forth no reason why the statute of limitations should be equitably tolled. Count III should be dismissed because it is untimely.

VI.     **Title VI Does Not Apply to the Federal Defendants.**

We moved the Court to dismiss Count IV, in part, for failure to state a claim upon which relief can be granted because Title VI does not apply to programs administered by the federal government. Def. Mem. at 14. Plaintiffs' counter that the federal defendants are liable under Title VI to the extent that they conspired with state official to discriminate because the federal officials, in this circumstance, would be operating under the color of state law. Response at 9. In support of this argument, plaintiffs cite Williams v. Glickman, 936 F. Supp. 1 (D.D.C. 1996). Plaintiffs'

argument is nonsense.  Plaintiffs' claims against the federal defendants pertain to the USDA's disbursement of loans and grants to farmers.  This federal activity would not become a state activity by virtue of a conspiracy between federal and state governmental officials:  it would still involve federal funds disbursed under the 'color of federal law.'  Also, Williams does not support the plaintiffs' argument.  To the contrary, it stands for the proposition that Title VI does not apply to discrimination by federal agencies.  Williams, 936 F. Supp. at 6.

The court could also dismiss these supposed Title VI conspiracy claims pursuant to Fed. R. Civ. P. 8 because the Complaint does not outline the form and scope of the conspiracy. The Complaint states simply that certain state workers "conspired with the aforementioned Federal employees to delay loans and credit to SGI members . . ."  Compl. ¶ 41.  The bare allegation of a conspiracy does not satisfy Rule 8.  Basil v. Milliken, 1990 WL 45738, * 1 (D.C. Cir. March 30, 1990) (unpublished); Ryan v. Mary Immaculate Queen Ctr., 188 F.3d 857, 860 (7th Cir. 1999).

## Conclusion

For the reasons stated above and included in our opening brief, the Court should read the Complaint to raise only official-capacity claims, and should dismiss the claims identified in our opening brief.

Dated: December 2, 2005                                    Respectfully submitted,

                                                            PETER D. KEISLER
OF COUNSEL:                                                 Assistant Attorney General

RON WALKOW                                                  ROSCOE C. HOWARD, JR.
RICK GIBSON                                                 United States Attorney
Attorneys

| | |
|---|---|
| United States Department of Agriculture | s/ Justin M. Sandberg<br>MICHAEL SITCOV<br>(D.C. Bar # 308692)<br>JUSTIN M. SANDBERG<br>(Ill. Bar # 6278377)<br>Attorneys<br>United States Department of Justice<br>Civil Division, Rm. 7224<br>20 Massachusetts Ave., N.W.<br>Washington, D.C.  20530<br>Telephone:  (202) 514-3489<br>Fax: (202) 616-8202<br><br>Counsel for Defendants |